UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:09-00049-1 |
| | ) | Chief Judge Haynes |
| SYTHONG THANNAVONG | ) | |
| a/k/a Sythong Sanders | ) | |

DEFENDANT THANNAVONG'S REPLY TO
GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the defendant and hereby responds to the arguments raised by the government in its sentencing memorandum (D.E. 482). The emboldened sections below reflect the headings from the government's arguments in its sentencing memorandum.

**1. Deference to the Commission's MDMA decision**

    **a. carefully developed the 2001 amendment**

The government's first argument opposing defendant's request for a Guidelines ratio other than the 500-to-1 in current use is that the Sentencing Commission "carefully developed the 2001 amendment to the MDMA-to-marijuana ratio." (D.E. 482, Sentencing Memorandum of United States, p. 3.) The facts, however, belie the "careful development" of the MDMA ratio.

At the time of the public hearing the Sentencing Commission was considering changing the MDMA-to-marijuana ratio from 35-to-1 gram to the same ratio as heroin –

1,000-to-1 gram. In its report the Commission noted that the volume of public comments it received on this issue "far exceeds that for any issue this Commission has addressed since taking office in November 1999." (D.E. 477-2, *Report to the Congress: MDMA Drug Offenses*, p. 4, United States Sentencing Commission, May 2001 (hereinafter *MDMA Report*). Of the voluminous comments the Commission received, only one – that of the Department of Justice – supported the 1,000-to-1 ratio. One other entity would have acceded to a 200-to-1 ratio. The rest of the "clinicians, physicians, psychologists, academic researchers, users, defense attorneys and other interest groups" (MDMA Report, p. 4) supported either no change to the 35-to-1 ratio or some lesser ratio. *See*, U.S. Sentencing Commissionn, *Public Comment - Emergency Amendments 2001* (Jan. 2001), available at http://www.src-project.org/wp-content/uploads/2009/08/ussc_publiccomment_. Of those witnesses who testified at the public hearing it appears that none of the non-DOJ witnesses supported the increase.

It is not enough for the Commission to say that it heard from a lot of people. The Commission did not follow weight of the expert advice it received in the public comment process. In no other administrative process would an agency decision withstand scrutiny because it just heard from people without taking into account the substance of the information it received. Instead of relying on the proof that it took at

2

the public hearing, the Commission chose to rely on information like the work of Dr. George Ricaurte and one of his studies that was published in a peer-reviewed publication. *See, MDMA Report*, pp. 8-9, fn. 15-17, 19, and related text. The study was later withdrawn from publication when it turned out that Dr. Ricaurte used methamphetamine in his study and not MDMA.

The whole rationale for the drug ratios in the Sentencing Guidelines is to create a system of relative harms – the more harmful the drug, the higher the sentence. The Commission acknowledged this in the MDMA Report when it explained why it was not going to use the heroin ratio of 1,000-to-1. *MDMA Report*, p. 5. The problem with the explanation is that all of the reasons that the heroin equivalency is not appropriate apply equally to cocaine and, therefore, support a rejection of the 200-to-1 ratio on which the Commission ultimately settled.

1.) "There are many more heroin cases in the federal system than MDMA cases." For fiscal year 2010-2011, 47,662 sentences were imposed for powder cocaine while only 859 sentences were imposed for MDMA. See, Sentencing Table, Attachment A.

2.) "Heroin is more addictive than MDMA." Drs. Parrott and Hanson, the government experts in *United States v. McCarthy*, admitted that cocaine is far more addictive than MDMA. *See,* D.E. 477-1, Transcript of testimony, pp. 230, 291, 339; D.E. 477-14, Court Order, p. 6.

3

3.) "Heroin has many more emergency room visits and deaths associated with its use than MDMA because, unlike MDMA which generally is taken orally, heroin is injected."  In 2009, there were 22,816 emergency room visits in which MDMA was involved.  *National Drug Threat Assessment (2011)*, Appendix B, Table B1, p. 49, National Drug Intelligence Center, U.S. Dept. Of Justice [hereinafter *Nat'l Drug Assessment 2011*]. In that same year the number of emergency room visits involving cocaine was 422, 896, or over nine times as many. *Id*.  *See, also*, D.E. 477-14, Court Order, p. 6. (noting that the government's expert witnesses acknowledged that MDMA fatalities were "rare.")

4.) "Heroin has more violence associated with it" than MDMA.  "Moreover, in contrast to MDMA, cocaine trafficking is associated with substantial violence. Ecstasy Report 19; see also Cocaine Report 86." D.E. 477-14, Court Order, p. 7.

5.) "Heroin causes greater secondary health effects, such as the spread of HIV and hepatitis, because it is injected."  "Moreover, cocaine use causes several adverse health effects not implicated by MDMA use – such as 'cardiovascular effects, including disturbances in heart rhythm and heart attacks; respiratory effects, such as chest pain and respiratory failure; [and] neurological effects, including strokes [and] seizures.' United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy ("Cocaine Report") 65 (2007)." D.E. 477-14, Court Order, p. 6.

The facts show that the 500-to-1 ratio that the Commission decided on was not

4

reasonable at the time it was adopted in 2001. Subsequent research shows that it has become no more reasonable with the passing of time and the studies done on MDMA in the interim.

**b. *Kimbrough* does not apply**.

The government next suggests that the Supreme Court's decision in *United States v. Kimbrough*, 552 U.S. 85 (2007), does not apply to the MDMA guideline because of the "extensive research" that the Commission did on MDMA distinguishes it from the crack cocaine guideline "where the Commission simply followed Congress' directive, failing to consider empirical data and national experience." (D.E. 482, Sentencing Memorandum, pp. 4-5.)

First, as detailed above, the Commission's "extensive research" produced a result that is internally inconsistent and does not support the Commission's result. Second, the Supreme Court noted that, "[t[he Commission did not use this empirical approach in developing the Guidelines sentences for drug-trafficking offenses. Instead, it employed the 1986 Act's weight-driven scheme." 552 U.S. at 96. This statement is not limited to crack cocaine and applies equally to the process used to derive the 500-to-1 ratio for MDMA.

In support of its argument that *Kimbrough* is not applicable to MDMA cases, the government cites *United States v. Kemper*, – F.Supp. – , 2012 WL 1618296 (E.D.Tenn.

5

2012). D.E. 482, Sentencing Memorandum, p. 5. The District Court in *Kamper* suggests that it can ignore the Supreme Court's decisions in *Kimbrough* and *Spears v. United States*, 555 U.S. 261 (2009), in any context outside of crack cocaine sentencing cases. But in *Kimbrough* the Court noted that "[t]he Government acknowledges ... that, <u>as a general matter</u>, 'courts may vary [from Guideline ranges] based solely on policy considerations, including disagreements with the Guidelines'" 552 U.S. at 570. (emphasis added.) Furthermore, the Sixth Circuit Court of Appeals has expressly held that "the authority recognized in *Spears* to reject on policy grounds an otherwise-applicable aspect of the Sentencing Guidelines" is not limited to the crack cocaine context. *United States v. Herrera-Zuniga*, 571 F.3d 568, 584 (6th Cir. 2009).

The District Court in *Kamper* also suggests that it can't do what the Sentencing Commission does: "gather evidence, hear testimony, and come to conclusions about certain matters within the sentencing context." *Kamper*, Slip Op. *8. But this is what federal judges do whenever they have to decide issues of the admissibility of scientific issues into evidence under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or decide complex issues in bench trials.

The government also argues, citing *Kamper*, that using a "reject-and-replace approach" would result in unwarranted sentencing disparity. D.E. 482, Sentencing Memorandum, p. 7; *Kamper* at *8. The Supreme Court, however, rejected this same

6

argument when the government raised it in *Kimbrough*:

> Neither of these arguments persuades us to hold the crack/powder ratio untouchable by sentencing courts. ... [I]t is unquestioned that uniformity remains an important goal of sentencing. As we explained in *Booker*, however, advisory Guidelines combined with appellate review for reasonableness and ongoing revision of the Guidelines in response to sentencing practices will help to "avoid excessive sentencing disparities." These measures will not eliminate variations between district courts, but our opinion in *Booker* recognized that some departures from uniformity were a necessary cost of the remedy we adopted.

552 U.S. at 107-08.

Finally, the District Court in *Kamper* noted that if it had information that sentences in MDMA cases represented departures/variances in a large number of cases that statistic would support Kamper's argument for a below-Guideline sentence.

> At the sentencing hearing, neither counsel for Kamper nor the government were able to produce statistics on non-Guideline sentences under U.S.SG § 2D1.1 for offenses involving MDMA. If, as with child pornography, courts were imposing non-Guideline sentences on MDMA defendants in more than fifty percent of cases, (FN18) this statistic would support Kamper's argument. In fact, the Commission does not appear to have made available statistics for MDMA sentences. Although the Commission tracks sentences imposed under USSG § 2D1.1 by drug, it does not specifically break out MDMA sentences. (FN19) Without this statistical information, the Court lacks an important metric—a measure of the sentencing practices of other federal judges dealing with this issue.

*Kamper* at *9. (footnotes omitted.)

That information can be found in Attachments A-C to this filing. For the fiscal years 2010-2011 the percentage of within-range sentences in MDMA cases nationally

7

was 26.7%. Sentences below the range for the same years totaled 72.7%. Attachment A. Just focusing on MDMA cases within the Sixth Circuit shows 18.1% of cases were sentenced within the range, while a total of 80.7% of MDMA cases were sentenced below the range. Attachment B. (Attachment C, on page 3, addresses cases in which the defendant was in Criminal History Category I.)

**b. the reasoning remains relevant**

**i. The science has not been disproven.**

See the first section, above.

**ii. Concerns about harm to youth**

The government argues that the recent increase in MDMA use by youth justifies the Commission's treatment of MDMA, *Nat'l Drug Assessment 2011*, quoting "MDMA use is increasing, reaching the highest levels of use since 2002."(Government's response, p. 11). The same Assessment notes, however, that "NSDUH [National Survey on Drug Use and Health] data show that past year MDMA use by individuals 12 or older increased from 0.9 percent in 2007 to 1.1 percent in 2009. The largest increase was among young adults (18 to 25 years of age), rising from 3.5 percent in 2007 to 4.3 percent in 2009." (*Nat'l Drug Assessment 2011*, p. 32.

More significantly, however, the Assessment, addressing increases in drug demand states:

8

> Rates of abuse – particularly for marijuana – are increasing, especially among young adults aged 18 to 25, who constitute the largest age group of current abusers. ... Adolescents appear to be abusing illicit drugs at a greater rate than most other segments of society. NSDUH shows that, among youths aged 12 to 17, the current illicit drug use rate increased between 2008 (9.3%) and 2009 (10.0%). <u>The majority of these abusers used marijuana</u>.

Nat'l Drug Assessment 2011, pp. 5-6. (emphasis added) Rates of increase by adolescents in 2010 for MDMA were 2.4% (8th grade), 2.7% (10th grade), and 4.5% (12th grade), while rates of increase by adolescents in 2010 for marijuana were 13.7% (8th grade), 27.5% (10th grade), and 34.8% (12th grade). *Nat'l Drug Assessment 2011*, Appendix B, Table B5, pp. 53-4.

Rates of usage of MDMA, therefore, are not up because MDMA is marketed to youth, but because <u>all</u> drug usage by youth has increased, but the majority of the increase is due to marijuana, not MDMA.

Despite the fact that this information shows that marijuana is a larger threat to youth in this country, under the Guidelines, marijuana is rated at 1 gram per 1 gram while MDMA is rated at 500 grams per 1 gram, contrary to the information provided.

### iii. Trafficking patterns reinforce Commission's concerns.

The government uses the National Drug Assessments to argue that MDMA trafficking is increasing. This information might be of more utility for comparison purposes if the 2010 and 2011 Assessments used the same metrics, but Figure 17 in the

9

2010 Assessment limits itself to MDMA seizures along the Northern Border (p. 41), while the 2011 Assessment talks in terms of total seizure amounts (p. 31). (Though Figure 10 on page 31 in the 2011 Assessment does show that seizure amounts of MDMA have fallen in both 2009 and 2010 from a high in 1008.) In the MDMA Report the Commission notes that DEA had seized over 3 million pills in 2000 and Customs had seized over 9 million pills in 2000, but it is not clear whether or not that is the total amount. If it is, then the 10-year increase from over 12 million pills to over 15 million pills might not be as significant. Even when the Assessments use the same metric the numbers don't always agree. For example, in the 2011 Assessment the amount of MDMA seized along the northern border in 2006 was reported at 1.9 million pills (p. 30) while in the 2010 Assessment it was stated to be 2.5 million pills (p. 41).

The Assessments also show, however, that the increase in abuse of drugs is not limited to MDMA but includes heroin, marijuana and methamphetamine (2010 at p. 1; 2011 at p. 1). The map on page 46 of the 2011 Assessment which reflects "greatest drug threat" does not even include MDMA. Nor does the map on page 48 of the 2011 Assessment which shows drug availability by region. Nor is MDMA included in Table B2, "Admissions to Publicly Funded Treatment Facilities, by Primary Substance." (2011 Assessment, Appendix B, p. 49.)

Respectfully submitted,

s/ *Sumter L. Camp*
SUMTER L. CAMP
Assistant Federal Public Defender
Attorney for Defendant
810 Broadway Suite 200
Nashville, TN  37203
615-736-5047

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of August, 2012, I electronically filed the foregoing *Defendant Thannavong's Reply to Government's Sentencing Memorandum* with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: **Lynne T. Ingram**, Assistant United States Attorney, 110 9th Avenue South, Suite A961, Nashville, Tennessee 37203.

s/ *Sumter L. Camp*
SUMTER L. CAMP